# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Erica Russell,

           Plaintiff,

                                          Civ. No. 09-431 (RHK/JJK)
                                          **MEMORANDUM OPINION**
                                          **AND ORDER**

v.

Burlington Insurance Company,

           Defendant.

---

Neil G. Clemmer, Gary L. Manka, Katz, Manka, Teplinsky, Graves & Sobol, Ltd., Minneapolis, Minnesota, for Plaintiff.

Amy J. Woodworth, Charles E. Spevacek, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.

---

In this insurance-coverage dispute, Plaintiff Erica Russell alleges that Defendant Burlington Insurance Company ("Burlington") breached the terms of a liability insurance policy it issued to Captain Black's Bar and Grill ("Captain Black's"), a bar located in Elko, Minnesota. The parties now cross-move for summary judgment. For the reasons set forth below, the Court will deny Russell's Motion and grant Burlington's Motion.

## BACKGROUND

Despite Russell's protestations to the contrary, the relevant facts are not in dispute. In the early morning hours of July 2, 2006, Russell was a patron at Captain Black's. Upon exiting at approximately 2:00 am, she noticed that a fight had broken out just

outside the bar's entrance.[1]  As she attempted to make her way around the fight, she was knocked down a flight of stairs, causing serious injuries.

On February 15, 2007, Russell's counsel sent a letter to Sarah Mahoney, the owner of Captain Black's, regarding her injuries.  (Bowman Aff. Ex. B.)  The letter asserted that "various patrons of the Bar were engaging in conduct that ultimately caused injury to Erica Russell, an innocent bystander, as she attempted to leave the front door of the establishment."  (Id.)  Counsel requested that Mahoney identify the bar's general liability insurer and provide a copy of the letter to the bar's insurance agent, ostensibly for the purpose of asserting a claim against the bar.  (Id.)  Counsel also served a "Notice of Dramshop Claim" on Captain Black's.  (Id. Ex. C.)[2]

On February 26, 2007, Mahoney caused to be filed with Burlington, the bar's general liability insurer, a "Notice of Occurrence/Claim" form.  The form was filled out by the bar's insurance agent, based on facts reported to him by Mahoney.  (See Clemmer Aff. Ex. A.)  The form provided as follows:  "Russell sitting on railing outside bar.  A fight ensued.  Russell knocked off railing.  Fell about 5 to 10 feet onto her head." (Clemmer Aff. Ex. A.)  Upon receiving this form, Joseph Bowman, a Burlington claims manager, contacted Mahoney.  (Bowman Aff. ¶ 6 & Ex. D.)  She informed Bowman that

---

[1] As the old saying goes, "nothing good happens after midnight."  State v. Brodeur, 736 N.W.2d 543 (Table), 2007 WL 1774944, at *5 n.5 (Wis. Ct. App. June 21, 2007).

[2] In a "dram-shop" claim, an individual injured by an intoxicated person sues the person or entity that provided the alcohol leading to the intoxication.  See Minn. Stat. § 340A.101 *et seq.*; Osborne v. Twin Town Bowl, Inc., 749 N.W.2d 367, 371 (Minn. 2008).

Russell had been knocked down during an altercation outside the bar. (Id. Ex. D.) Burlington then denied coverage for the incident pursuant to, *inter alia*, the policy's "assault and battery" exclusion. In pertinent part, that exclusion states that the policy does not cover injuries "[a]rising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery." (Id. Ex. E.)

Five months later, Russell commenced an action in Minnesota state court against Captain Black's and ten John-Doe defendants (the individuals involved in the fight), seeking damages for her injuries. She asserted two claims against Captain Black's: (1) the bar illegally sold, bartered, or gave intoxicating liquors to the persons participating in the fight and "said unknown persons engaged in conduct ultimately causing serious and permanent injuries" to her – *i.e.*, a dram-shop claim; and (2) the bar failed to keep an orderly place and protect customers and, as a result, she "was assaulted and battered by John Does 1-10," causing her injuries. (Woodworth Aff. Ex. A, ¶¶ 8, 13.)

Captain Black's then sought coverage for (and defense of) Russell's claims by Burlington. By letter dated July 30, 2007, Burlington disclaimed liability, reiterating its earlier position that the policy provided no coverage because Russell's injuries arose out of an assault or battery. (Woodworth Aff. Ex. F.) It suggested that Captain Black's tender the defense of Russell's claims to its liquor liability insurer, the Minnesota Joint Underwriting Association ("MJUA"). (Id.) The bar did so, and the MJUA did, in fact, provide a defense. (Id. Ex. B.) Ultimately, the MJUA and Captain Black's entered into a

Miller-Shugart settlement with Russell.[3] The MJUA agreed to pay $200,000 to settle the dram-shop claim, Russell reserved all other claims against Captain Black's and the John-Doe defendants, and Captain Black's agreed to assign all claims that it might have against Burlington to Russell. (Id.)

Russell later commenced the instant action,[4] contending that Burlington breached the policy because her claims were "not specifically excluded" thereunder. (Compl. ¶ 9.) The parties now cross-move for summary judgment.[5]

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the

---

[3] "A Miller-Shugart settlement . . . arises where an insurer denies all coverage for an accident, and the abandoned insured agrees with the accident victim that judgment in a certain sum may be entered against it in return for the accident victim releasing the insured from any personal liability and agreeing to seek coverage from the insurer." Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co., 517 F.3d 1032, 1036 n.4 (8th Cir. 2008).

[4] The action was commenced in Hennepin County District Court and removed to this Court based upon diversity of citizenship.

[5] Russell has not filed a formal cross-motion, but her brief is styled as "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment." (Doc. No. 28.)

-4-

evidence, and the inferences reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

Russell contends that Burlington was obligated to defend the underlying action because there exists no evidence that she was injured "*as a result* of an assault and battery." (Mem. in Opp'n at 5 (emphasis in original).) This argument, however, misapprehends the nature of Burlington's obligations.

State law controls whether an insurer has a duty to defend. See, e.g., Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Cos., 465 F.3d 900, 903 (8th Cir. 2006). Under Minnesota law,[6] "[a]n insurer's duty to defend an insured is contractual. [The duty] generally covers those claims that arguably fall within the scope of the policy." Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415 (Minn. 1997). "An insurer may ordinarily determine whether a cause of action includes an 'arguably covered' claim

---

[6] Neither party argues that any other state's law applies. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

by comparing the wording of the policy to the allegations of the underlying complaint." Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 407 (Minn. 1998).[7] An insurer can avoid its duty to defend only where the claim alleged is *clearly* outside coverage. Id.

Upon comparing the complaint in the underlying action with the policy here, it becomes clear that Burlington correctly determined that no coverage existed. Russell alleged in the complaint that Captain Black's failed to keep an orderly place of business and protect its customers, and "[t]hat as a direct and proximate result, . . . [she] was assaulted and battered by John Does 1-10, causing her to suffer serious and permanent injury." (Woodworth Aff. Ex. A, ¶ 13.) In other words, Russell expressly alleged that her injuries were caused by – or, in policy parlance, "arose out of" – an assault and battery at Captain Black's.[8] Accordingly, her claims clearly fell outside the scope of coverage under the policy, and no duty to defend arose. See, e.g., Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 258 (Minn. 1993) (where the pleadings "do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend").

At oral argument, Russell asserted for the first time that the underlying complaint could be read to allege claims having nothing to do with the fight. She argued that

---

[7] The Court must engage in the same analysis here. See Meadowbrook, 559 N.W.2d at 415 ("In determining the existence of such a duty, a court will compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy.").

[8] "The phrase 'arising out of' has been given broad meaning by Minnesota courts." Murray v. Greenwich Ins. Co., 533 F.3d 644, 649 (8th Cir 2008). There need only exist a "causal relationship" between Russell's injuries and the fight; she need not have been directly assaulted or battered herself. See id. at 650.

Burlington was reading the complaint "in a vacuum," improperly focusing on the language (in paragraph 13) stating that she was "assaulted and battered."  In her view, when taken "as a whole," the complaint could be read to assert premises-liability claims, such as insufficient lighting or the outside railing being placed at an unsafe height.  She pointed to paragraph 12's allegation that the bar was negligent in the "performance of [its] duties," and paragraph 14's allegation that she suffered injuries "as a direct and proximate result of th[at] negligence."  (See Woodworth Aff. Ex. A, ¶¶ 12, 14.)  These generic allegations, Russell argued, were sufficient to alert Burlington to the possibility that something more than the fight was at issue, triggering its "broad" duty to defend.

This argument is without merit.  Taken as a whole, the complaint in no way suggested that Russell's claims were predicated on anything other than the fight outside the bar.  In fact, it is Russell who is reading the complaint "in a vacuum" – she looks to the language in paragraphs 12 and 14 without considering the paragraph between the two, which expressly alleged that "as a direct and proximate result of the negligence of Captain [Bl]ack's . . . , *Plaintiff was assaulted and battered by John Does 1-10*, causing her to suffer serious and permanent injury." (Woodworth Aff. Ex. A, ¶ 13 (emphasis added).)  The Court declines to parse the underlying complaint in this fashion.

Moreover, the remainder of the complaint confirmed that Russell's claims were based only on injuries arising out of the fight.  For example, paragraph 8 stated that, as a result of the alcohol provided by the bar, the fight's participants were "engaged in conduct ultimately causing serious and permanent injuries" to her.  (Woodworth Aff. Ex.

A, ¶ 8.)  And paragraph 17 expressly alleged that the John-Doe defendants "carelessly, negligently, unlawfully, and/or intentionally assaulted, battered and injured Plaintiff." (Id. ¶ 17.)

Russell asserted at oral argument that the underlying complaint sufficiently pleaded broad negligence claims under Minnesota's notice-pleading rules.  But while those rules do "not require absolute specificity in pleading," they *do* obligate a plaintiff to plead "a sufficient basis *of facts* to notify the opposing party of the claims raised against it."  Meyer v. Best W. Seville Plaza Hotel, 562 N.W.2d 690, 692 (Minn. Ct. App. 1997) (emphasis added).  None of the facts in the underlying complaint even remotely suggested that Russell's claims were based on improper lighting, unsafe railings, or anything else unconnected to the fight.

It has sometimes been noted that "if it walks like a duck, quacks like a duck and looks like a duck, it has got to be a duck."  Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan, 544 F. Supp. 2d 848, 858 (D. Minn. 2008) (citations omitted), aff'd, 574 F.3d 644 (8th Cir. 2009).  The underlying complaint here, taken as a whole, "quacked" loudly and clearly:  it only alleged claims arising out of an assault and battery.  Hence, when the Court compares it to the wording of the policy, no "arguably covered" claim is found.  Franklin, 574 N.W.2d at 407.

This, however, is not the end of the matter.  "[I]f a complaint fails to establish coverage, an insurer still must accept tender of defense if it has independent knowledge of facts that may establish coverage."  Travelers, 465 F.3d at 903 (quoting St. Paul Mercury

Ins. Co. v. Dahlberg, Inc., 596 N.W.2d 674, 676-77 (Minn. Ct. App. 1999)). Russell makes such an argument here, pointing to the "Notice of Occurrence/Claim" form submitted to Burlington on February 26, 2007. (See Mem. in Opp'n at 5.) As set forth above, that form provided, in pertinent part: "Russell sitting on railing outside bar. A fight ensued. Russell knocked off railing. Fell about 5 to 10 feet onto her head." Russell argues that the claim form "did not indicate that [she] was injured *as a result* of an assault and battery and certainly did not provide sufficient evidence that an assault and battery was causally connected to her fall." (Id. (emphasis in original).) While she acknowledges that the form "did reference a 'fight,'" she contends that "those few words did not make a sufficient causal connection between the two occurrences." (Id.) Because there existed no other evidence indicating she was injured "as a result of an assault and battery," she argues that Burlington was obligated to investigate and determine the cause of her injuries. Absent such an investigation, she contends that the insurer breached its duty to defend. (Id. at 6-7.)

There are several flaws in this argument. First, it is based on a tortured reading of the "Notice of Occurrence/Claim" form. In the Court's view, there is only one reasonable way to interpret that form: the fight resulted in Russell being knocked down and, hence, caused her injuries. Were it otherwise, there would be no reason to mention the fight in the claim form at all – it would simply state that Russell fell while on the bar's premises.

Second, Russell is wrong in asserting that there existed no other evidence indicating that her injuries were caused by the fight. In particular, Russell told Mahoney

in her February 15, 2007, letter that "various patrons of the Bar were engaging in conduct that ultimately caused injury to [her], an innocent bystander, as she attempted to leave the front door of the establishment." Her "Notice of Dramshop Claim" similarly provided that "unidentified persons were intoxicated at the time of their actions leading to the injuries sustained by" her. These documents lent further support to the conclusion that her injuries were causally connected to the fight at Captain Black's.[9]

Russell derides Burlington for "quickly mov[ing] to deny coverage and a defense for its insured" without undertaking any investigation, ostensibly because "as soon as it saw the words 'assault and battery' in the complaint," it concluded that the policy did not provide coverage. (Id. at 5.) But she never informs the Court what she thinks such an investigation would have revealed. Tellingly, she nowhere argues that something other than the fight caused her injuries or that such a "cause" would have been discovered after further investigation.

More importantly, however, the undisputed evidence in the record establishes that Burlington *did*, in fact, investigate her claims. Upon receiving the "Notice of Occurrence/Claim" form, Bowman contacted Mahoney to inquire about the circumstances culminating in Russell's injuries. Mahoney told Bowman that "an altercation occurred between other patrons [and] [d]uring the altercation, [Russell] was

---

[9] That conclusion also is consistent with evidence uncovered during the Scott County Sheriff's Office's investigation into the altercation (see Woodworth Aff. Ex. D), but the Court need not – and does not – rely on that information in resolving the instant Motion.

knocked off the railing, causing her to hit her head on the concrete below." (Bowman Aff. Ex. D.) Hence, the investigation confirmed what the complaint in the underlying action, and the documents Russell submitted to Burlington, had already alleged: that her injuries "arose out of" an assault and battery. No further investigation was required under those circumstances. See Garvis, 497 N.W.2d at 258 (if claim is not "arguably within the scope of coverage, the insurer has no duty to . . . investigate further to determine whether there are other facts present which trigger such a duty"); Dahlberg, 596 N.W.2d at 678 ("[I]f an insured fails to meet its burden of presenting a covered claim through a complaint or extrinsic evidence, an insurer need not speculate about facts that may trigger its duty to defend.").[10]

---

[10] Russell's counsel's assertion – that "[u]pon information and belief, [Burlington] did not undertake any independent investigation of the occurrence relevant to Plaintiff's injuries prior to its determination to deny a defense" (Clemmer Aff. ¶ 4) – is troubling for several reasons. First, "[u]nder Rule 56(e), an affidavit filed in support or opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient." Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983). A necessary corollary, therefore, is that "[a]ttorneys' affidavits not based upon personal knowledge" are improper. Postscript Enters. v. City of Bridgeton, 905 F.2d 223, 226 (8th Cir. 1990). Second, it is clear from the record that Burlington disclosed the existence and extent of its investigation to Russell during discovery. (See Second Woodworth Aff. ¶ 2; Bowman Aff. Ex. D.) Yet, counsel averred in his affidavit – on his "belief" – that no such investigation was undertaken. At oral argument, counsel explained that he erred in his affidavit and that he had intended to state that Burlington did not undertake a *reasonable* investigation. The Court is dubious of that claim, particularly since the same improper assertion is found in the Memorandum in Opposition. (See Mem. in Opp'n at 6 ("The Plaintiff is unaware of *any* investigation carried out by the Defendant to determine if there was an insurable loss arising out of this occurrence.") (emphasis in original).) Regardless, based on the current record, the Court does not believe that the imposition of sanctions under Federal Rule of Civil Procedure 56(g), as requested by Burlington, is warranted.

Simply put, from the earliest stages Russell has contended that she was injured at Captain Black's as a result of a fight. Her belated claim that the cause of her injuries is "unknown" flies in the face of those contentions. She cannot avoid summary judgment by engaging in revisionist history to create a factual dispute where none otherwise exists. Uhiren v. Bristol-Myers Squibb Co., 346 F.3d 824, 829 (8th Cir. 2003) ("A sham attempt to create a factual issue for purposes of defeating summary judgment is clearly precluded."); cf. Gray v. City of Valley Park, Mo., 567 F.3d 976, 981 (8th Cir. 2009) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment"). The allegations in the underlying complaint, when coupled with the other information provided to Burlington, clearly established that Russell's claims fell within the "assault and battery" exclusion of the policy. Accordingly, Burlington owed no duty to defend. See Murray v. Greenwich Ins. Co., 533 F.3d 644, 648-49 (8th Cir. 2008); Travelers, 465 F.3d at 903; Meadowbrook, 559 N.W.2d at 415; Dahlberg, 596 N.W.2d at 678. And because the duty to defend is "broader in scope than the duty to indemnify," Franklin, 574 N.W.2d at 406, Burlington also owed no duty to indemnify Russell for her injuries. E.g., Florists' Mut. Ins. Co. v. Wagners Greenhouses, Inc., 535 F. Supp. 2d 947, 950 (D. Minn. 2008) (Doty, J.).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 27) is **DENIED**,

Defendant's Motion for Summary Judgment (Doc. No. 20) is **GRANTED,** and Plaintiff's Complaint (attached to Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 3, 2009  s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge